Spear, J.
The plaintiffs in error are Trustees of The Imperial Savings Company, an insolvent concern whose affairs are being wound up under the orders of this court, the said' Trustees acting by virtue of an appointment by this court. The defendants in error are Assignees of The East Side Bank Company, an insolvent banking corporation organized under the laws of this state, and are engaged in winding up the affairs of that institution.
The suit in the common pleas was by the plaintiffs in error against the defendants in error to have a trust impressed upon moneys that remained in the vaults of the bank at the time of the assignment. It is shown by the record that upon two separate occasions the Trustees, plaintiffs in error, deposited with the bank, trust money coming into their hands, to the amount in one instance of three thousand five hundred and ninety-four and seventy-six hundredths dollars and later the sum of four thousand dollars, taking in each instance a certificate of deposit expressing that the deposit was made by E. B. Smith and A. B. Baumann, Trustees; that the same was not subject to check, and the money payable on return of the certificate properly indorsed. No interest was promised. It further appears by the record that the bank failed before the money was withdrawn, having funds in its vaults amounting to over eleven thousand *60 dollars, and that at all times, after the first deposit and to the date of the assignment, the bank had in its vaults money in amount and value more than sufficient to pay the sum of seven thousand five ’hundred and ninety-four and seventy-six hundredths dollars so deposited by said Trustees. The Assignees refused to allow the claim of the Trustees as a preferred claim but did accept it as a claim against the general assets of the bank.
The cause was heard on a demurrer to the petition and amendment thereto. The demurrer was sustained, both courts holding that the facts alleged presented only the usual case of a general deposit, thus holding that the relation of debtor and creditor arose between the Trustees and the bank, and therefore no trust was established. Judgment was thereupon rendered against the plaintiffs.
In support of the judgment counsel for the bank argue that simply the' relation of debtor and creditor existed; that no decision is to be found in the books sustaining the opposite view,” that the cases relied upon by plaintiffs in error are all cases where some tortious act of the trustee, or some misappropriation of' the trust fund, is involved, while in this case, it is insisted, the deposit was not tortious or a wrongful conversion of the money. The act of the Trustees in making the deposit was not contrary to any law, statute or usage, and was in accordance with the requirements of ordinary prudence and of a careful administration of trust funds. Therefore the relation of debtor and creditor arose, and no trust would follow. Hence the demurrer was properly sus *61 tained. The claim against this holding, urged by counsel for plaintiffs in error, is that the bank officers being aware of the fact that they were receiving on deposit trust money (as distinctly shown by the certificates of deposit) they were therefore bound to know that the Trustees had no power to contract with the bank to assume the relation of debtor and creditor; that while they might lawfully deposit trust money in the bank for safe keeping, such deposit would become a bailment and not a loan. The effect of the deposit in such case, it is urged, would be to create the bank a voluntary trustee bound to preserve the fund intact and account for it on demand, and the fact that the bank had at all times up to the assignment, more than enough money in its vaults to satisfy the claim of the Trustees, the presumption is that the bank, in conducting its usual business, used its own funds and not those as to which it was thus a trustee. Therefore the Trustees’ claim ought to be allowed as a preferred claim against the money in the hands of the Assignees of the bank, and the trial court erred in sustaining the demurrer.
• We are thus required to determine whether, upon the foregoing facts, the Trustees are entitled to payment of their claim out of the assets of the insolvent bank in the hands óf the Assignees before any distribution to other creditors, or whether the character of their claim is such that they are merely general creditors of the estate, entitled only to their pro rata share of the fund for distribution. In determining this final question the first query presented is whether or not the *62 deposit by the Trustees was, in the eyes of the law, in the nature of a special deposit, or a mere general deposit. If the former, then a second question arises which is, has the fund been kept in such a way as to permit a court of equity to engraft a trust upon it ?
Consideration of the first question leads to an inquiry as to the duty of these Trustees in the settlement of the trust. Speaking generally, the trustee is bound to protect the trust property in every reasonable manner. He must use due diligence to obtain possession of it, and retain it securely under his own control. He cannot divest himself of the trust by conveying or assigning the property to third persons save where the trust is for the purpose of sale, or other disposition. The main duty in the present instance, therefore, was to get hold of the assets, reduce them to money, and under the direction of the court apply the money so collected, after payment of expenses, to the satisfaction of the claim of creditors of the insolvent company. It cannot, we think, be seriously contended that the Trustees had, in the proper discharge of their duties as such, the right or power, by express contract, to create the relation merely of debtor and creditor; that is, to loan out the trust funds. Such act would, in the absence of authority from the court, clearly be inconsistent with, and a violation of, their plain duty; and if they had no right to make such loan generally it would seem clear that a loan to a bank by way of a general deposit would be equally beyond their power. So that, in the absence of a ¡clear showing that the latter was the purpose in *63 the present instance, the court would not be justified in attributing such purpose to the Trustees in placing this money with the bank. The fact that the account was not subject to check itself indicates that the deposit lacked one feature usually to be found present in case of a mere general deposit, and the fact that no interest was to be paid negatives in a measure the idea that it was the purpose of the Trustees to loan out the money. The expressed obligation incurred by the bank was to return the money, or like money, on the presentation of the certificates properly indorsed; its implied obligation was to have funds sufficient at all times to satisfy these obligations, and this promise the bank kept. Knowing as the officers did, as shown by the terms of the certificates themselves, that the money thus deposited was not the money of the Trustees, but was the money of the trust which they represented, it is fair to conclude that the bank was put upon inquiry and that it should be held bound by the legal effect of knowledge which might have been so acquired. Therefore it is to be charged with knowledge of the rple which forbade the Trustees loaning out the trust funds generally, or, as in this specific instance, making a mere general deposit, for such act would be nothing other than creating by special agreement the relation merely of debtor and credit,or. Of course the bank became a debtor because it had incurred obligations which were to be satisfiecfby the payment of money. But whose debtor was it? Not the Trustees’, for the Trustees held the money in trust, and the obligations, although running to the Trustees in form, were the property *64 of the trust. This conclusion, we think, justifies the holding that these parties must be held to have understood that the deposits were to be in the nature of special deposits. The bank thus became itself, by its voluntary action, a trustee; not a trustee of the Trustees, because they did not own the money, but a trustee for the trust which those Trustees represented. If so, such deposits imposed upon the bank the duty to treat the money as trust funds, and to fulfill its contract with the Trustees accordingly.
We are aware that there are opinions of text-writers, Pomeroy for instance, that “trust monies may be deposited for a reasonable time in a bank having good credit, if the deposit is made to the credit of the trust estate, and not in the trustee’s individual name ; and the trustee does not become liable for a loss occasioned by a failure of the bank.” This statement should be taken merely as a general rule; otherwise it seems to us in some features too broad; nor does it in terms involve the question whether the deposit may or not be general. If treated as relating to a special deposit only probably no criticism is to be made upon it. Manifestly, though, each case must stand on its own facts, and 'the question of the liability of the trustee in case of failure of the bank in any case must depend upon the circumstances of that case. A deposit in his own name by the trustee is condemned because it is held to be a mingling of funds and thus a conversion, from which liability usually follows. But however viewed, the rule above stated affords but little if any help in determining the question we have in the case at bar, *65 because our inquiry relates to the rights of depositing Trustees to a certain fund as against the claims of general creditors. The question of personal liability on the part of. the Trustees is not presented by the record, and is therefore not here considered. But if it should be determined that the Trustees would not be liable individually, still it would not follow that the fund in the bank vault may not be reached; and it is difficult to see how the doctrine of the text, if accepted, helps us to understand the nature of these deposits, or to arrive at the intent of the parties in making and receiving them.
The insistence of counsel for defendants in error that the authorities cited by plaintiffs in error are predicated upon some tortious act of the trustee, performed or threatened, or some misapplication of the trust fund, has not been overlooked. Those cases concede and the counsel concede that where the deposit is wrongful the relation merely of debtor and creditor between the bank and the trustee does not arise. So that the case turns after all upon whether the deposits in the present instance were wrongful in the sense of being unauthorized. The question whether the deposits, if treated as general, would be unauthorized acts by the Trustees, is the very crux of the case, and a question akin to that is disposed of in some of the cases cited by the holding that the making of a general deposit of a trust fund by a trustee in a bank in good credit is entirely proper, which is simply a holding by those courts that the Trustee has the right generally to loan the trust money, only making sure that the borrower is then in good *66 credit, and is, with due respect, but a begging of the question. Of the cases cited by qounsel for defendants in error in support of the contention that one “who makes a general deposit of trust funds in a bank, thereby creating the relation of debtor and creditor between himself and the bank, both acting in good faith, is not entitled to any preference over other general depositors in the event the bank becomes insolvent,” M’Afee v. Bland, 11 Ky. L. R., 1; Officer v. Officer, 120 la., 389; and Fletcher v. Sharpe, 108 Ind., 276, are pertinent examples. They do appear to support the counsels’ claim in a measure. But in the opinion in the latter case is found this significant remark: “If in receiving a trust fund a bank acted with knowledge that it was taking the fund in violation of the duty of the trustee, the rights of the cestui que trust might be different. In respect to such a case we decide nothing here.” And the point made in our case is that the Trustees were without power to make a mere general deposit of trust funds, in other words without power to loan out the trust money, and that the bank must be held to have had knowledge of that fact.
A review of the cases cited, and many others, leave us still of the opinion that the Trustees had no power or authority to make a general deposit of the trust funds, the same being in legal effect, if so made (as held in Shaw v. Bauman, 34 Ohio St., 25, and in Ind. District v. King, 80 la., 498), but a loan by the Trustees to the bank of the trust funds; and that, giving effect to that settled principle of equity that wherever a duty rests upon an individual, in the absence of evidence to the con *67 trary, it shall be presumed that he intended to do right rather than wrong, to perform his duty rather than to violate it, it must be presumed that the Trustees and the bank officers intended these deposits to be special rather than general, and that in such case the relation of mere debtor and creditor did not arise.
This brings us to a consideration of the second question. Has the fund been kept in-such a way as to 'authorize a court of equity to engraft a trust upon it? The facts are clearly stated and the question simple. The deposits were in the name of the persons as trustees; and, as we have found, the character of trust money was thus stamped upon them; and there was at all times after the first deposit and until the assignment, funds in the vaults of the Bank more than sufficient to satisfy the certificates. Under earlier holdings there was some question as to the effect of the mingling of funds, the blending of the trust money with the money of the trustee being suffered to defeat the owner’s title and compel him to stand as a mere' unsecured creditor; this upon the idea that tne money was not earmarked and therefore could not be recovered in specie. But there seems to be now, under the practically unanimous rulings of the courts as well as on principle, no serious question arising from that fact. It is not the identical dollars that may be pursued any more than it is the identical grains of vffieat put in a warehouse of elevator that the depositor may follow, but equivalent dollars, and the rule now is, as held in Board of Comrs. v. Strawn, 157 Fed. Rep., 49, opinion by Lurton, J., *68 that where a bank has mingled trust money with its own funds, money paid out from such fund for its own purposes will be presumed to have been paid from its own money and not from the trust fund in a situation where, as in this case, the mingled fund has not been reduced at any time below the amount of the trust fund. The presumption above referred to rests upon • the idea that the drawings out from time to time were monies which the bank had a right to expend in its own business, and that the balance which remained included the trust fund which the bank had no right to so use. To have used it would have been a violation of - the trust, and that will not be presumed in the absence of evidence to that effect. The same conclusion is expressed in Massey v. Fisher, Receiver, 62 Fed. Rep., 958, thus: “The fact that the money was not marked, and by a mingling with other funds of the bank, lost its identity, does not affect the right to recover in full, if it can be traced to the vaults of the bank, and it appears that a sum equivalent to it remained continuously within those vaults until removed by the receiver.” • See, also, Elizalde v. Elizalde, 137 Cal., 634. Numerous other cases to like effect cited by counsel will be found in the Reporter’s notes, and we regard the principle as not only consonant with reason and fair dealing but as abundantly supported by authority.
Our conclusion therefore is that the Trustees are entitled to have their claim allowed as a preferred claim, and that therefore the demurrer of the Assignees to the petition and amendment thereto of the Trustees was not well taken. Nor *69 is there any inequity in this conclusion. The funds of the bank in its vaults were increased by these deposits to the full amount thereof and nothing is asked to be taken away except what, by these deposits, was put there. The general creditors are entitled only to so much of the estate of an insolvent bank as remains after liens paramount to their claims and other preferred charges are satisfied. And, considering the privacy which attaches to the method of doing banking business, the general creditor can not reasonably claim that he had given credit to the defaulting Bank by reason of the trust deposit.
The judgments will be reversed and the cause remanded to the common pleas with direction to overrule the demurrer and for further proceedings.

Reversed.

Davis, C. J., Shauck, Price and Johnson, JJ., concur.